UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SAMARA PEREIRA TREGA, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) No. 2:25-cv-00643-JAW |
| PAMELA BONDI, *in her official capacity as Attorney General of the United States*, et al., | ) ) ) ) ) |
| Respondents. | ) ) |

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

A noncitizen from Brazil brings a petition for habeas corpus, claiming her detention pending removal proceedings violates due process. The court dismisses her petition because her courthouse arrest does not violate due process and because it does not have subject matter jurisdiction over her remaining claims.

**I.     BACKGROUND**

Samara Pereira Trega is a Brazilian citizen who arrived in the United States without inspection in November 2019. *Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Emer. Mot. for Stay of Transfer* ¶ 1 (ECF No. 1) (*Pet.*); *id.* Attach. 2 (*Order of Release*). Since ICE released Ms. Trega on her own recognizance on November 17, 2019, *see Order of Release*, Ms. Trega has resided in Peabody, Massachusetts with her two minor children. *Pet.* ¶¶ 1, 14. Ms. Trega has a pending asylum application before the Chelmsford, Massachusetts Immigration Court. *Id.* ¶¶ 1, 15; *id.*, Attach. 4. On or about November 4, 2025, U.S. Immigration and Customs Enforcement (ICE) took Ms. Trega into custody after she appeared for a scheduled

hearing in a separate proceeding at a Massachusetts courthouse. *Id.* ¶ 16. Ms. Trega is currently in ICE custody and remains detained at Cumberland County Jail in Portland, Maine. *Id.* ¶¶ 1, 17.

On December 29, 2025, Ms. Trega filed a verified petition for writ of habeas corpus and an emergency motion seeking a temporary restraining order (TRO) against her removal from the District of Maine, alleging her detention violates the Immigration Nationality Act and her due process rights under the Fifth Amendment of the United States Constitution. *Id.* ¶¶ 18-22, 29-36, 47-50. That same day, the Court issued a seventy-two-hour emergency stay order, enjoining Respondents from transferring Ms. Trega outside the District of Maine. *Emer. Order Concerning Stay or Transfer or Removal* (ECF No. 4).

On December 31, 2025, after a teleconference of counsel, the Court issued two orders. *Min. Entry* (ECF No. 8). First, the Court issued a TRO blocking Ms. Trega's transfer outside the District of Maine. *Order on Mot. for TRO* (ECF No. 9). Second, the Court ordered Respondents to show cause why Ms. Trega's petition should not be granted. *O.S.C.* (ECF No. 10). Respondents filed their response opposing Ms. Trega's petition on January 5, 2026. *Return and Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 12) (*Resp'ts' Opp'n*). Ms. Trega filed her reply on January 12, 2026. *Pet'r's Reply to Resp'ts' Opp'n and Suppl. Notice of Recent Dev.* (ECF No. 13) (*Pet'r's Reply*). On January 14, 2026, Respondents filed their sur-reply. *Sur-Reply on Return O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 16) (*Resp'ts' Sur-Reply*).

While the parties prepared briefing in this matter, Ms. Trega received a bond hearing before an Immigration Judge on January 8, 2026. *Pet'r's Reply* at 1. The Immigration Judge denied Ms. Trega bond, finding she posed a threat to the community. *Id.*, Attach. 1 (*Order of the Immigration Judge*). In anticipation of Ms. Trega's asylum hearing on January 16, 2026, the parties agreed to proceed without an evidentiary hearing or oral argument, allowing the Court to resolve Ms. Trega's petition on the parties' briefing. *Pet'r's Status Update Regarding Resolution of the Pet.* at 2 (ECF No. 15) (*Pet'r's Status Update*); *Resp'ts' Sur-Reply* at 10.

## II. The Parties' Positions

Ms. Trega alleges her detention violates the Immigration Nationality Act (INA) and her due process rights under the Fifth Amendment of the United States Constitution. *Pet.* ¶¶ 18-22, 29-36, 47-50. In her petition, Ms. Trega argued she is entitled to a bond hearing under the discretionary detention scheme of the INA. *Id.* ¶¶ 33-50. Having now received that bond hearing, Ms. Trega maintains the Immigration Judge's denial of bond based on her pending state criminal charge violates due process. *Pet'r's Reply* at 4-7. She also maintains that her arrest inside a Massachusetts courthouse and her subsequent difficulties meeting with her attorneys violates due process. *Pet.* ¶¶ 23-28; *Pet'r's Status Update* at 4-10. She seeks, inter alia, an order requiring an Immigration Judge to provide her a "constitutionally adequate" bond hearing, *Pet'r's Reply* at 8-9, or in the alternative, a writ of habeas corpus ordering her immediate release. *Id.*; *Pet.* at 15-16.

Respondents oppose Ms. Trega's petition. Although Respondents' January 5, 2026 opposition asserts Ms. Trega is properly detained under the INA's mandatory detention scheme and is therefore not entitled to a bond hearing, *Resp'ts' Opp'n* at 1, in their sur-reply Respondents argue Ms. Trega's petition should be dismissed as the January 8, 2026 bond hearing afforded her the due process her petition seeks to obtain. *Resp'ts' Sur-Reply* at 1-2. Respondents further assert that the Court does not have jurisdiction to adjudicate her claim about the constitutional adequacy of her bond hearing or access to counsel claims. *Id.* at 2-8. Respondents also maintain that Ms. Trega's arrest inside a Massachusetts courthouse does not violate the law. *Resp'ts' Opp'n* at 2-3.

### III. LEGAL STANDARD

The INA "channels immigration claims through the administrative process and sharply limits judicial review while that process is ongoing." *Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 U.S. Dist. LEXIS 169007, at *10 (D. Me. Aug. 29, 2025) (citing 8 U.S.C. § 1252(b)(9)).

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). Section 1252(b)(9), known as the "zipper clause," *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999), "squeezes claims relating to removal into the administrative process, only to release them for judicial review once a final administrative order is issued." *Sicha*, 2025 U.S. Dist. LEXIS 169007, at * 10. Until a final order of removal issues, § 1252(b)(9) strips federal courts of

4

jurisdiction to hear challenges to removal proceedings. 8 U.S.C. § 1252(b)(9) ("[N]o court shall have jurisdiction, by habeas corpus . . . or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact").

Despite the apparent breadth of the zipper clause, the First Circuit holds that the claims-channeling provision does not cover all claims by immigration detainees. *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 10 (1st Cir. 2007). A noncitizen may raise claims "collateral to" the removal process — such as those that "cannot effectively be handled through the available administrative process" — in federal court. *Id.* at 11. For example, "district courts retain jurisdiction over challenges to the legality of detention in the immigration context." *Id.*

The INA gives the Government discretion to detain some noncitizens pending a decision on whether to remove them from the country. 8 U.S.C. § 1226(a). Discretionary detention is governed by § 1226(a), which affords the Attorney General "broad discretion" either to detain a noncitizen or to release them on bond or conditional parole during removal proceedings. *Nielsen v. Preap*, 586 U.S. 392, 409 (2019); 8 U.S.C. § 1226(a)(1)-(2). This provision applies when a noncitizen is "arrested and detained" "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). Following their arrest and detention "[o]n a warrant," and pending the completion of removal proceedings, § 1226(a) provides that the Attorney General, in their discretion, "may continue to detain the arrested [noncitizen]," or "release the [noncitizen] on . . . bond" or "conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2). In the

5

First Circuit, to detain a noncitizen subject to § 1226(a), "due process requires the government to either (1) prove by clear and convincing evidence that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). "An I[mmigration] J[udge]'s decision to continue detaining a noncitizen may be further appealed to the BIA." *Id.* at 26 (citing 8 C.F.R. § 236.1(d)(3)).

An appeal from a BIA decision lies with the appropriate court of appeals, not the district court. See 8 U.S.C. §§ 1252(b)(9), 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal"); *Aguilar*, 510 F.3d at 9 ("In enacting section 1252(b)(9), Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings").

## IV.  DISCUSSION

The Court dismisses without prejudice Ms. Trega's habeas petition.  First, the Court lacks jurisdiction to resolve her claims related to her bond hearing and access to counsel.  Ms. Trega received her constitutionally required due process on January 8, 2026 when she appeared for a bond hearing before an Immigration Judge.  Ms. Trega's claims related to the Immigration Judge's bond determination and subsequent access to counsel issues arise from her proceedings and are therefore channeled into the administrative process, outside this Court's jurisdiction.  Second,

6

the Court dismisses without prejudice Ms. Trega's courthouse arrest claim because she fails to demonstrate that her arrest was unlawful or violates due process.

### A. Applicable Detention Scheme

The Court agrees with Ms. Trega that she is subject to § 1226(a)'s discretionary detention scheme and is therefore entitled to a bond hearing before an Immigration Judge. First, ICE arrested Ms. Trega pursuant to an I-200 arrest warrant subject to § 1226(a). *Id.*, Attach. 1 (*Arrest Warrant*). Second, although initially contesting this point, Respondents' subsequent briefing appears to concede Ms. Trega is subject to § 1226(a)'s discretionary detention scheme. *See Resp'ts' Sur-Reply* at 1-2. Third, the substantial weight of caselaw across the district courts favors Ms. Trega, who entered the country more than two years ago without inspection, being categorized under § 1226(a)'s discretionary detention scheme. *See Mercado v. Francis*, No.25-cv-6582 (LAK), 2025 U.S. Dist. LEXIS 232876, at *9-10, n.22 (S.D.N.Y. Nov. 26, 2025) (explaining that similarly situated petitioners "have prevailed, either on a preliminary or final basis, in 350 [out of 362] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States") (collecting cases). Accordingly, Ms. Trega is entitled to a bond hearing before an Immigration Judge. *See* 8 U.S.C. § 1226(a); *Hernandez-Lara*, 10 F.4th at 41.

### B. Bond Hearing

Because Ms. Trega appeared before the Chelmsford Immigration Court on January 8, 2026, to challenge her detention during removal proceedings, *Pet'r's Reply* at 1, the Court is unable to conclude based on this record that she was denied due

7

process regarding her continued detention, as she in fact received constitutionally required due process when she appeared for her bond hearing before an Immigration Judge. *Hernandez-Lara*, 10 F.4th at 41. As the First Circuit wrote in *Hernandez-Lara*, "in order to continue detaining [a noncitizen] under section 1226(a), due process requires the government to either (1) prove by clear and convincing evidence that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk." *Id*. Ms. Trega has made no showing that the Immigration Judge failed to provide her with due process when the Immigration Judge held a detention hearing pursuant to *Hernandez-Lara*.

Ms. Trega maintains the Immigration Judge's denial of bond based on "a pending criminal case—with no finding of guilt and no conviction" violates due process. *Pet'r's Reply* at 5. However, "[t]he traditional rules of evidence do not apply in immigration hearings, and arrest reports historically have been admissible in such proceedings." *Henry v. INS*, 74 F.3d 1, 6 (1st Cir. 1996) (internal citation omitted). "Moreover, while an arrest, without more, is simply an unproven charge, the fact of the arrest, and its attendant circumstances, often have probative value in immigration proceedings." *Id*. Accordingly, an Immigration Judges "may reasonably decide that a recent history of criminal conduct, even if it has not resulted in a conviction, outweighs other factors that might warrant release on bond." *Alsharif v. Donelan*, No. 20-cv-30030-PBS, 2020 U.S. Dist. LEXIS 106182, at *10 (D. Mass. May 14, 2020) (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

In fact, as noted earlier, there is an additional layer of due process protection available to Ms. Trega since she is entitled to appeal the Immigration Judge's denial of her release to the BIA.[1] *Hernandez-Lara*, 10 F.4th at 26 (citing 8 C.F.R. § 236.1(d)(3)). Thus, asserting a position contrary to First Circuit authority, Ms. Trega has failed to demonstrate how her claims "cannot effectively be handled through the available administrative process." *Aguilar*, 510 F.3d at 11. Rather, Ms. Trega's claim that her pending criminal charge cannot serve as clear and convincing evidence of dangerousness to the community is "direct[ly] link[ed] to," and "inextricably intertwined with, the administrative process," and is not the kind of collateral attack on the INA's statutory scheme that district court may resolve. *Id.* 510 F.3d at 10-13; *cf. Gicharu v. Carr*, 983 F.3d 13, 17-18 (1st Cir. 2020) (holding § 1252(b)(9) barred federal court review of petitioner's claims of insufficient service and ineffective assistance of counsel because "they plainly 'arise from' the removal process"). Specifically, as noted earlier, whether Ms. Trega is a danger to the community is precisely the type of question the First Circuit has directed an Immigration Judge to consider at a bond hearing. *Hernandez-Lara*, 10 F.4th at 41.

At bottom, Ms. Trega's argument amounts to a request to relitigate the Immigration Judge's bond determination in federal district court. In enacting § 1252(b)(9), however, Congress eliminated Ms. Trega's attempt to relitigate in federal district court the Immigration Judge's discretionary bond determination after

---

[1] A party may appeal an immigration judge's bond determination to the BIA by filing a Notice of Appeal from a Decision of an Immigration Judge (Form EOIR-26) within thirty days. 8 C.F.R. §§ 236.1(d)(3)(i), 1003.38(b).

9

hearing. *Aguilar*, 510 F.3d at 9 ("Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings" (citing H.R. Rep. No. 109–72, at 174 (2005) (Conf. Rep.), reprinted in 2005 U.S.C.C.A.N. 240, 299).

### C. Access to Counsel

Similar to Ms. Trega's challenge to the conduct of her bond hearing, the Court is unable to conclude based on this record that she was denied due process regarding her access to counsel claim. The INA channels these claims through the administrative process and therefore this Court's review is barred by § 1259(b)(9). As the First Circuit explained in *Gicharu*, Ms. Trega's claims are "based upon an alleged deprivation of [her] right to counsel in connection with a removal proceeding," precisely the type of claim that "arise[s] from the removal proceeding" itself, and is stripped from district court review. *Gicharu*, 983 F.3d at 17. Any challenge of fundamental unfairness arising from access to counsel that may "prevent[ ] [Ms. Trega] from reasonably presenting [her] case" arises from her removal proceedings and may be appealed through the administrative process, including appellate review by the First Circuit. *Lozada v. INS*, 857 F.2d 10, 13 (1st Cir. 1988); 8 U.S.C. § 1259(b)(9).

### D. Courthouse Arrest

Ms. Trega alleges that her arrest by ICE inside a Massachusetts courthouse "raises serious constitutional and due-process concerns that independently support habeas relief." *Pet.* ¶ 23. According to Ms. Trega, when "[v]iewed in context," Ms.

10

Trega's courthouse arrest "formed part of a sequence of conduct that deprived [her] of meaningful access to the courts and undermined the fairness and integrity of the judicial process," including "disrupt[ing] [her] ongoing legal proceedings, impair[ing] [her] access to retained counsel, alter[ing] the forum and posture of her litigation by precipitating her transfer to out-of-state detention, and contribut[ing] to subsequent adverse immigration consequences." *Id.* ¶ 27.

As Respondents point out, it appears that the First Circuit is skeptical of Ms. Trega's argument. Although the First Circuit has not squarely addressed the question, in *Ryan*, a panel expressed doubt that the privilege against civil arrests inside a courthouse extends to immigration arrests, which are more akin to criminal arrests. *Ryan v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 974 F.3d 9, 28 (1st Cir. 2020) ("the fact that civil immigration arrests aim to vindicate uniquely sovereign interests supplies a strong reason to think that the common law would have treated them like criminal arrests for purposes of this privilege"). This Court is unpersuaded by Ms. Trega's argument for the reasons given in *Ryan*. *Id.* ("The unique nature of removal further undermines any analogy between civil immigration arrests and arrests in private civil suit").

However, even if Ms. Trega could demonstrate her courthouse arrest violated the law, her remedy would not be in a petition for a writ of habeas corpus. Illegal arrest cannot serve as a basis for habeas relief. *United States v. Crews*, 445 U.S. 463, 474 (1980) ("An illegal arrest without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction"). Similarly, an illegal

arrest is not a bar to removal, nor a means of invalidating a noncitizen's custody status pending those proceedings, where ICE arrested Ms. Trega pursuant to a valid Form I-200 Warrant for Arrest of Alien. *Arrest Warrant*. As explained above, the INA permits ICE to detain noncitizens subject to removal proceedings, like Ms. Trega, so long as she receives a bond hearing, which Ms. Trega received on January 8, 2026. 8 U.S.C. § 1226(a); *Pet'r's Reply* at 1. In other words, because Ms. Trega's courthouse arrest does not bear on the legality of her detention pending her removal proceedings, granting writ of habeas corpus would not redress any alleged injury stemming from her arrest.

## V.    CONCLUSION

Accordingly, the Court DISMISSES without prejudice Samara Pereira Trega's Petition for Writ of Habeas Corpus (ECF No. 1) for lack of subject matter jurisdiction as to her claims related to her January 8, 2026 bond hearing, access to counsel, and her claim related to her courthouse arrest.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of January, 2026